## STUMPH v. THE GUARDIANSHIP OF PFEIFFER.

GUARDIAN AND WARD.—*Guardian of Insane Person.*—*Duties and Powers of.* —The same duties are required of, and the same powers granted to, the guardian of an insane person, as are required of, and granted to, the guardian of a minor, so far as the same are applicable.

SAME.—*Neglect of Guardian.*—*Interest.*—Where a guardian allows his ward's money to lie idle in his hands for an unreasonable time, or mingles the same with his own, he is chargeable with interest thereon.

SAME.—*Report.*—*Order of Court.*—*Failure to Except.*—*Practice.*—Where, on making a report, intended to be final, of the estate of his ward, a guardian, pursuant to an order of the court and without exception thereto, makes a new report of such estate, charging himself with an increased amount, he can not afterward object to such order.

SAME.—*Guardianship Terminated by Death.*—*Duty of Guardian.*—*Contempt.*— The guardianship of an insane person is terminated by the death of the ward, and the duty of the guardian then is to fully account for, and pay over to the proper person, all of his deceased ward's estate remaining in his hands; but his performance of such duty can not be enforced by an order of the court to pay such estate into court, for the use of the proper person, within a certain time, or "show cause why he does not stand in contempt."

SAME.—*Remedy of Heir.*—*Statute Construed.*—*Embezzling Guardian.*—Where a guardian fails to account for, and pay over, the estate of his deceased ward, the remedy of the person entitled to such estate is by an action against the guardian personally, or on his bond; as section 161 of the act in relation to the settlement of decedent's estates, 2 R. S. 1876, p. 549, providing that an embezzling administrator or executor may be attached and imprisoned, does not apply to an embezzling guardian.

From the Marion Circuit Court.

*R. B. Duncan, C. W. Smith* and *J. S. Duncan,* for appellant.

*J. S. Reid* and *I. Klingensmith,* for appellee.

HOWK, J.—It appears, from the record of this cause, that the appellant, John B. Stumph, prior to the 19th day of November, 1864, had been duly appointed guardian of the estate of Elizabeth Pfeiffer, a person of unsound mind. On the 27th day of February, 1877, the appellant, as such guardian, presented to the court below his "final report," in which it was recited that his ward, the said Elizabeth Pfeiffer, was then deceased. In this final

report, the appellant charged himself "with funds on hand, as per last report," and with interest from October 17th, 1868, when said "last report" appears to have been made, to February 17th, 1877; and, after claiming sundry credits, the appellant charged himself, in his "final report," with "balance on hand, $2,017.35."

When this "final report" was filed in the court below, one Christina Stumph, who is described in the record as "the sole heir of Elizabeth Pfeiffer, deceased," appeared and filed written exceptions to said report, upon the ground that it was "incorrect, wrong and not true," and did her great wrong and injustice, in certain specified particulars.

To these exceptions, the appellant filed his verified answer; and the said final report, and the exceptions thereto, and the appellant's answer to the exceptions, were then, by agreement, submitted to the court below, upon the evidence adduced in relation thereto, "for settlement." Upon this hearing, the court below made the following order:

"The said guardian should have kept all moneys coming into his hands upon interest, and having failed to do so, he, himself, must be charged with interest accordingly; the guardian will therefore make out his final accounts anew from the beginning, charging himself with interest at the rate of six per cent. per annum, compounded, until the date of the making of his first report, to wit, October 18th, 1868, and thereafter charging himself with interest at the rate of nine per cent. per annum, compounded; the guardian is allowed one hundred dollars for his services, one-half of which amount he may place to his credit at the time of making his first report. He is allowed the sum of twenty-five dollars for his attorneys, Smith & Hawkins, for services in this behalf."

In pursuance of this order, the appellant, as such guardian, made a new final report, in which he charged himself, after deducting all credits, with a "balance in his

hands of two thousand six hundred and four dollars." This report was approved, and thereupon the court below made the following order:

"And now said John B. Stumph is ordered and directed to pay said sum of two thousand six hundred and four dollars ($2,604), with ten per cent. interest until paid, within thirty (30) days herefrom, into court, for the use of said Christina Stumph, the sole heir of said Elizabeth Pfeiffer, deceased; which payment in court of said sum shall completely discharge said John B. Stumph, as such guardian, and, failing therein, to show cause why he does not stand in contempt of this court; and the costs accrued herein, by reason of the exceptions to the report of said guardian, are now adjudged against the said John B. Stumph, and to which finding and order the said John B. Stumph now excepts."

The appellant's bill of exceptions is properly in the record.

In this court, the appellant has assigned the following alleged errors of the court below:

1st. In requiring him, as such guardian, prior to the date of his first report, to annually compound interest on the money in his hands at the rate of six per cent. per annum, and from the date of his second report to annually compound interest on the money in his hands at the rate of nine per cent. per annum; and,

2d. In ordering him to pay the sum of two thousand six hundred and four dollars, with ten per cent. interest until paid, within thirty days, into court, for the use of the said Christina Stumph; and, failing therein, to show cause why he did not stand in contempt of said court.

We will consider and decide the questions arising under these several alleged errors in the order of their assignment:

1st. The appellant was appointed guardian of the person and estate of Elizabeth Pfeiffer, a person of unsound

mind, we may assume, by the court having probate juris-
diction at the time in Marion county, Indiana, under the
provisions of "An act defining who are persons of un-
sound mind, and authorizing the appointment of guar-
dians for such persons," etc., approved May 29th, 1852.
2 R. S. 1876, p. 598.   Under the 8th section of this act,
"The same duties are required of, and the same powers
granted to, guardians of persons of unsound mind as are
required of, and granted to guardians of minors, so far
as the same may be applicable."  2 R. S. 1876, p. 600.
In the 9th section of "An act touching the relation of
guardian and ward," approved June 9th, 1852, the duties
of guardians of minors are defined with clearness and
precision.   2 R. S. 1876, p. 588.   Among the duties of
guardians, enjoined on them in and by the said 9th sec-
tion, those duties, which are especially applicable to the
case we are now considering, are the following:

"*Second.*   To manage the estate for the best interest
of his ward;" and,

"*Fourth.*   At the expiration of his trust, fully to ac-
count for and pay over to the proper person, all of the
estate of said ward remaining in his hands."

It seems very clear to us, that the-appellant did not
manage the estate of his ward, consisting of money in
his hands, for her best interest.   His negligence and un-
reasonable delay in making proper investments of his
ward's estate, under the order and direction of the proper
court, were such breaches of his official duty as guar-
dian as rendered him personally liable to account for in-
terest on the amount of said estate.   Where a guardian
allows his ward's money to lie idle for an unreasonable
time, or mingles such money with his own, the law seems
well settled, that he is chargeable with interest on the
amount of such money.   Schouler Domestic Relations, p.
477, and notes.   It is the duty of a guardian to keep his
ward's money safely, and at interest, when he can; and
if he fails to invest such money profitably, when he can

do so, he must be charged with interest thereon.    Reeve Domestic Relations, 3d ed., p. 467, and notes.

It seems to us, that the appellant is in no condition to complain, in this court, of the first order of the court below in this case, as the record fails to show that he objected or excepted, at the time, to said order.  On the contrary, it appears from the record, that, upon the making of said order, in pursuance thereof and without objection thereto, the appellant at once submitted to the court, for approval, his verified report, claiming as credits therein the allowances made in said order, and acknowledging that there was then a balance in his hands, belonging to his ward's estate, of two thousand six hundred and four dollars.  In this condition of the record, the first alleged error complained of by the appellant was not properly saved, in our opinion, and presents no question for our consideration.

2d.  The second error assigned calls in question the validity of the final order of the court below in this case. We know of no law which authorized the making of this final order.  The appellant's guardianship of Elizabeth Pfeiffer had terminated with the death of his ward. 2 R. S. 1876, p. 601, sec. 9.  The appellant's duty then was, as his trust had expired, " fully to account for and pay over to the proper person, all of the estate of said ward remaining in his hands."  If the appellant failed to discharge this duty, it seems to us, that the only remedies of " the proper person " who might be entitled to said estate were either an action against the appellant personally, or an action on his bond, as guardian.    The extraordinary remedy given by section 161 of the decedents' estates act, where " any executor or administrator shall embezzle or conceal any of the property of the decedent," is not applicable in terms, nor has it been made applicable by any statutory provision, to the case of a guardian, either of a minor or of a person of unsound mind.

In our opinion, the said final order of the court below

is erroneous, except as to the payment of costs in that court by the appellant; and, with that exception, the said final order is reversed, with costs, and the cause is remanded for further proceedings in accordance with this opinion.