## THE STATE, EX REL. CAVINS, *v.* SANDERS ET AL.

GUARDIAN AND WARD.—*Duty of Guardian as to Ward's Money.—Investments.*—It is the duty of a guardian to loan or otherwise invest the money of his ward, in such a way as to keep it always at interest, as far as practicable, and to use due care in making such loans or investments.

SAME.—*Conversion of Trust Funds.*—A guardian is answerable for any mismanagement or unauthorized dealings with the trust moneys in his hands; and any misapplication of such moneys is a conversion of them, within the meaning of the statute relating to guardians. 2 R. S. 1876, p. 592, sec. 13.

SAME.—*Identity of Trust Fund Must be Preserved.*—It is the duty of a guardian to preserve the indentity as well as the existence of the fund under his control. If he destroys the fund he renders himself responsible for it at once; and if he pays away the money as his own, the trust is practically at an end.

SAME.—*Investment of Trust Funds by Guardian in His Own Business.—Liability on Bond.—Surety.—New Bond.*—The investment of the ward's money by the guardian in his own business, or in the business of others in which he has an interest, as a mere business investment, is a conversion of such money, for which he becomes immediately liable on his bond; and the solvency of such guardian at a subsequent time, when he signs a new bond with a new surety, is both an irrelevant and immaterial question, so far as concerns the liability of the surety in the original bond, for the money so invested.

From the Greene Circuit Court.

*A. G. Cavins,* for appellant.

*R. R. Taylor, E. E. Rose* and —— *Short,* for appellees.

NIBLACK, J.—This was an action on a guardian's bond, for the conversion of the ward's assets by the guardian, for loaning the assets to insolvent persons, and for not taking security for loans made by the guardian.

The complaint showed, that, on the 9th day of March, 1870, the defendant Riley Sanders was appointed guardian of the person and estate of Abraham L. Milam, a minor, and that one John G. Owen became the surety of the said Sanders, on his bond as such guardian ; that, while the said Sanders was such guardian, and the said Owen was his surety, as aforesaid, on his said bond, there came into the said Sanders' hands, as assets of his said ward, the sum of five thousand dollars, concerning the management of which breaches were assigned, as above stated ; that, on the 5th day of January, 1876, the said Sanders was removed from his said guardianship, and Elijah H. C. Cavins, the relator in this action, appointed as his successor ; and that the said Owen had died, and the other defendant, Simon Bland, had been appointed administrator of his estate.

The defendant Bland answered in general denial ; also, that the said Owen, in his lifetime, to wit, on the 29th day of March, 1874, had been released from further liability on said guardian's bond, and a new bond had been executed on that day in place of the bond on which he, the said Owen, was so surety ; and that the alleged misconduct of the said Sanders did not occur until after the said Owen was released from his said suretyship.

Sanders made no defence.

The plaintiff replied in denial, and upon a trial by a jury there was a verdict for the defendant, and judgment accordingly.

By causes assigned for a new trial, some questions are reserved upon the evidence and the instructions of the court.

It was shown on the trial, that, on the 29th day of March, 1874, Owen was discharged from further liability as surety on the bond signed by him, and that the said Riley Sanders had thereupon executed a new bond with Isam Sanders, his father, as his surety ; that, on the 26th

day of May, 1874, there was a balance in the hands of the said Riley Sanders, as such guardian, of three thousand four hundred and eighty dollars and seven cents; that all of that sum, except some interest, had come into his hands some time before the release of Owen from the original bond; that most, if not all, of the aggregate amount received by him as assets of his said ward had been loaned to and invested at different times, as received, in the business of Sanders & Sons in farming, before Owen was released as his surety; that the firm of Sanders & Sons was composed of Isam Sanders, Perry Sanders and the said Riley Sanders, the guardian; that the said Riley Sanders took no note or security for the money thus loaned to and invested in the business of Sanders & Sons; that he charged it to the firm on a memorandum book, by putting down the amounts received from time to time and the dates of receiving them; that there were no charges of these amounts in any other way; that the firm of Sanders & Sons went into bankruptcy in February, 1875, and had never repaid or refunded the money loaned to it and invested in its business by the said Riley Sanders, as such guardian as above stated, and that the estate of said firm would not probably pay more than twenty-five cents on each dollar of its indebtedness.

As to the facts thus shown on the trial, there was no conflict in the evidence.

It is the duty of a guardian to loan or otherwise invest the money of his ward in his hands, in such a way as to keep it all the time at interest, as far as practicable, and to use due care in making such loans or investments. He is not permitted to use such money for his own benefit, or to make any profit out of it for himself.    2 Kent Com. 229.   The rule in that respect is very strict.  Guardians, and all other trustees of the moneyed concerns of others, are answerable for any mismanagement or unauthorized

dealings with the trust moneys in their hands, and any misapplication of such moneys is a conversion of them, within the meaning of the statute relating to guardians. 2 R. S. 1876, p. 592, sec. 13, p. 549, sec. 162. It is their duty to preserve the identity as well as the existence of the fund under their control. If they destroy the fund, they render themselves responsible for it at once. If they pay away the money as their own, the trust is practically at an end. 1 Addison Torts, 441; *Stumph* v. *Pfeiffer*, 58 Ind. 472; Perry Trusts, secs. 463, 464.

The investment of the money in his hands, by a guardian, in his own business, or in the business of others, in which he has an interest, as a mere business investment, is a conversion of the money for which he is liable on his bond. If he refunds or settles with his ward or other person to whom he is responsible, before suit is instituted on his bond, his surety is discharged; otherwise the surety is answerable for his principal.

In this case, we think it was plainly shown that Riley Sanders simply invested the money of his ward in the business of the firm of Sanders & Sons, for the benefit of himself and his partners, and that the transaction was in no sense a legitimate loan of the money to that firm, but only a conversion of the money, for which the said Riley Sanders became immediately liable on his bond.

In this view of the case, the question as to the solvency of Isam Sanders at the time he signed the new bond, which seems to have occupied considerable time on the trial, was both an irrelevant and immaterial one, tending to confuse the minds of, if not to mislead, the jury.

In our opinion, the court erred in refusing to grant a new trial, as the verdict appears to us not to have been sustained by the evidence.

The judgment is reversed, with costs, and the cause remanded for a new trial.