SMITH, ADMR., ET AL. *v*. MERCER ET AL.

[No. 17,685. Filed June 9, 1948. Rehearing denied November 19, 1948.]

576

*Roscoe D. Wheat* and *A. C. Ford,* both of Portland, attorneys for appellant.

*Wayne W. Hinkle, Moran* and *Abromson,* all of Portland, attorneys for appellees.

BOWEN, J.—This was an action upon a verified petition filed by the administrators of the estate of one Anna Belle Smith, deceased, naming her heirs at law as defendants, for a declaratory judgment inter-

preting an ante-nuptial contract entered into between the said Anna Belle Smith, deceased, and her husband, James A. Smith, who was one of the administrators of her estate and to determine the rights of all the parties in said ante-nuptial agreement.

The said James A. Smith and Anna Belle Landwich in contemplation of marriage entered into an ante-nuptial agreement and were thereafter legally married and lived together as husband and wife for a period of almost nine years, and until the death of the said Anna Belle Smith. The ante-nuptial contract was in full force and effect at her death. The agreement provided that, with the exception of certain designated personal property consisting of a team of horses and certain farm equipment and machinery, that all of the other personal property owned by the parties to such agreement upon the performance of the contemplated marriage and all or any increase to said personal property after said marriage should become the joint property of the parties to the agreement. The agreement provided that each party should retain, free and clear of any claim whatsoever on the part of the other, his or her real estate then separately owned by each party and with the same force and effect as if no marriage had been performed between them. The agreement further provided that each party should jointly own any and all personal property acquired after the marriage by either party or by their joint and mutual efforts, and that such property should, at the death of one of the parties, pass to the surviving party in the same manner as real estate descends in cases of tenancies by the entireties.

The issues were joined by answers filed by defendant, James A. Smith, individually in which he claimed all of the personal property of the decedent as his sole

property, and the answer filed by the defendant heirs at law who denied that it was agreed that all of the personal property of the parties then had and owned and all accumulations would be the absolute property of the survivor and they claimed the property in controversy as the property of the decedent's estate as the sole heirs thereof.

The cause was submitted to the court for trial, evidence was heard, and the court entered a finding and judgment as follows:

".  .  . that at the death of Anna Belle Smith there was in effect a valid and subsisting ante-nuptial agreement entered into between the defendant James A. Smith and the decedent; that by the execution of the ante-nuptial agreement the parties intended to and did effectually cut off and prevent the application of the laws of descent as the same would apply to the estates of the parties in the event of the death of either and substituted for the provision of the laws of descent the provision of the ante-nuptial agreement; that it was the intent of the parties that neither should have any right in case of survivorship in the real estate of the other by virtue of the laws of descent or through any other source except the ante-nuptial agreement; that it was the intent of the parties that the *chattel* property owned by each of them except the items specifically reserved by the deceased wife of the defendant at the time of the marriage should become common property in which each owned an undivided one-half interest and that all *chattel* property that was acquired during the marriage by either or by the mutual effort of both should be jointly held by them during the life of both and that at the death of either the survivor should become the absolute owner of such property. That it was not the intent of the parties that the money owned by either of them and carried in a separate account in bank or in their personal possession should be included with the *chattel* property as being held or owned by them in common.

"IT IS THEREFORE CONSIDERED, AD-JUDGED AND DECREED That the defendant, James A. Smith, as the surviving husband of Anna Belle Smith, is the owner of an undivided ½ interest in all of the chattel property remaining which was owned by his deceased wife at the time of their marriage other than the items specifically reserved in the ante-nuptial agreement, together with any increase or offspring of the animals owned by her and still remaining; that the defendant James A. Smith is the owner by survivorship of all chattel property acquired by him and said Anna Belle Smith by their joint efforts or by either of them during their said marriage and that otherwise is not entitled to any interest in the estate, real or personal of said decedent." (Our italics.)

The appellant, James A. Smith, Administrator, and James A. Smith individually assigned grounds for a new trial which were that the finding and decision of the court is not sustained by sufficient evidence and is contrary to law. The motion for a new trial was overruled and this appeal followed.

The appellees contend that error predicated upon the overruling of a motion for a new trial in the present case is not available to appellant, and that the error sought to be asserted by appellant can only be asserted by a motion to modify the judgment and an assignment of error that the trial court erred in overruling such motion.

It is the contention of appellees that the appellant seeks relief from the form and substance of the judgment rendered against him and that he must have first presented to the trial court a motion definitely specifying in what respect and particulars the judgment should be modified.

The action in the instant case is for a declaratory judgment. Under our statutes, §§ 3-1101 and 3-1112

Burns' 1946 Replacement, and the decisions of our Supreme Court, the judgments in such actions do not involve executory or coercive relief, and the judgments in such cases are limited to the determination and declaration by such judgment of the rights, status, or relation of the parties. *Brindley* v. *Meara* (1935), 209 Ind. 144, 148, 198 N. E. 301; *Bowser* v. *Tobin* (1938), 215 Ind. 99, 102, 18 N. E. 2d 773.

There is no executory relief given by this judgment. It is clear that the judgment in the instant case follows the finding. The appellant questions such finding and judgment. It is well settled that a motion to modify a judgment does not present any question as to what the finding ought to be, but raises the question whether the judgment conforms to the findings actually made. *Briles, Admr.* v. *Prudential Ins Co.* (1939), 216 Ind. 627, 24 N. E. 2d 240; *Elliott* v. *Gardner* (1942), 113 Ind. App. 47, 51, 46 N. E. 2d 702; *Wise* v. *Layman* (1926), 197 Ind. 393, 150 N. E. 266.

The real question in issue is whether the judgment and decision determining and declaring the rights of the parties in the personal property owned by the decedent was contrary to law, and whether such finding and decision of the court was sustained by sufficient evidence. Therefore, the appellant is entitled to raise such question by his motion for a new trial, and it was not necessary for appellant to file a motion to modify the judgment.

The appellees claim that appellant has waived error by not conforming in his brief to the rules of the Supreme Court, and that no question is presented and that the judgment should be affirmed. A careful consideration and examination of ap-

pellant's brief in connection with appellees' objections convinces us that most of appellees' objections are technical, and upon a careful consideration of the brief, we are convinced that a good faith effort has been made by appellant's counsel to prepare the brief in conformity with the requirements of this court, and that it appears that the brief maker had in mind the various rules, and has so prepared and presented his questions that under the rules and with full consideration thereof, this court is fully able to understand the various points made by the brief maker. Under the decisions of our court, we must rule that the brief of appellant is therefore sufficient. *Linville* v. *Chenoweth* (1945), 115 Ind. App. 355, 59 N. E. 2d 129; *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 71, 46 N. E. 2d 836; *Kist* v. *Coughlin* (1944), 222 Ind. 639, 649, 57 N. E. 2d 199.

The specifications in appellant's motion for a new trial, the overruling of which is assigned as error, is that the finding and decision of the court is not sustained by sufficient evidence and is contrary to law. The court by his finding determined that the ante-nuptial agreement between the parties was valid and in full force and effect. This agreement with reference to the property in dispute contained the unambiguous words "personal property." "Personal property" includes goods, chattels, evidences of debt and things in action. Burns' 1946 Replacement, § 2-4701. *Peacock* v. *Albin* (1872), 39 Ind. 25; *Vawter* v. *Griffin et al.* (1872), 40 Ind. 593; Henry's *Probate Law and Practice*, 5th Edition, Col. 1, § 176; *Words and Phrases*, Vol. 32, p. 316.

Therefore, it seems clear that the use of the words "personal property" would plainly and clearly include bank accounts owned by the parties to the agreement.

The court by his decision, in effect, determined that the parties had placed an interpretation upon the ante-nuptial contract that it was the intent of the parties that the *chattel* property owned by each of them should become the common property in which they owned an undivided ½ interest, and that all *chattel* property that was acquired during the marriage by either or by the mutual effort of both should be jointly held by them during the life of both and that at the death of either the survivor should become the absolute owner of the property. The construction of the court was that the parties had interpreted the words "personal property" in the ante-nuptial agreement to mean *chattel* property. In this, we feel that the court was in error.

Parties do have the right to put an interpretation upon their own contracts which may even do away with the ordinary and literal meanings of the terms of the contract, which the courts will recognize and uphold in construing such contracts, so long as such interpretations do not result in a contract which is illegal. *Reissner et al.* v. *Oxley et al.*, (1881), 80 Ind. 580; *Central Pharmacal Co.* v. *Salb* (1938), 106 Ind. App. 495, 13 N. E. 2d 875; *Town of Hagerstown* v. *Liberty Light & Power Co.* (1926), 84 Ind. App. 115; 150 N. E. 116; *Louisville, New Albany & Chicago Ry. Co.* v. *Reynolds et al.* (1888), 118 Ind. 170, 20 N. E. 711.

However, there must be some element of doubt, obscurity, uncertainty, or ambiguity in the terms of the contract before the acts of the parties in interpreting such contract can be used to determine the intent and meaning of the terms employed. When the terms of the contract are plain, intelligible, and free from doubt and uncertainty, rules of construction are unnecessary and of no possible service.

In such a case, it is not the proper function of the courts by any rules of interpretation or construction to make another an entirely different contract for the parties from the one they made for themselves. *Morris v. Thomas* (1877), 57 Ind. 316.

If the meaning of the contract is clear, its effect will not be controlled by an erroneous construction given it by the parties themselves. *Walb Construction Co. v. Chipman* (1930), 202 Ind. 434, 175 N. E. 132; *Ketcham v. Brazil Block Coal Co.* (1883), 88 Ind. 515; *Gardner v. Caylor* (1900), 24 Ind. App. 521, 56 N. E. 134; *Lemcke v. Hendrickson* (1915), 60 Ind. App. 323, 110 N. E. 691.

In *Vinton v. Baldwin* (1884), 95 Ind. 433, 436, our Supreme Court cites the rule as stated by the Supreme Court of the United States: "In cases where the language used by the parties to the contract is indefinite or ambiguous, and hence, of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence. *Chicago v. Sheldon,* 9 Wall. 50."

The evidence most favorable to appellees having relation to any interpretation and construction of the contract by the parties, substantially and materially, was as follows: It was stipulated between the parties that Anna Belle Smith gave in certain personal property to the Township Assessor from year to year in her own name and signed it and that she had her own bank account in the Peoples Bank from year to year and had an account at the time of her death in her own name in the Peoples Bank. One witness testified that appellant in the presence of his wife during her lifetime stated, "You understand, Ray, that I am to have half of the stuff outside, the cattle, chickens, and grain. I had a good bed to sleep in, plenty to eat, and

a good warm place. That was all that was required of anybody." Another witness testified that after the death of his wife, Anna Belle Smith, the appellant stated in the presence of others, "You understand, Ray, that I am to have half of the grain and half of the cattle that are on the place." There was other evidence as to the payment of family expenses by Mrs. Smith.

Since the words "personal property" have such a plain, definite, and certain meaning in the law, the decision and judgment of the lower court was erroneous when it substituted for the plain, intelligible, and unambiguous terms of the written contract, a judicial construction in direct conflict therewith, which was in the main based upon the declarations of one of the parties subsequent to the execution of the contract and the marriage of the parties.

The finding and judgment of the trial court was erroneous only insofar as it determined in effect that the parties intended that chattel property only was covered by the terms "personal property" in the antenuptial agreement.

The court erroneously held that it was not the intent of the parties that money owned by either of the parties and carried in a separate account in bank or in their personal possession should be included within the property as being held or owned by them in common. Bank accounts and money are clearly personal property and included within the agreement.

By the clear and express terms of the contract and by statute, Burns' Stat., § 51-104, the appellant, James A. Smith, was the owner of only an undivided ½ interest in all of the personal property remaining which was owned by his deceased wife at the time of their marriage other than the items specifically reserved in the ante-nuptial agreement, together

with any increase or offspring of the animals owned by her and still remaining; and said appellant was the owner by survivorship of all personal property acquired by him and his wife, Anna Belle Smith, by their joint efforts or by either of them during their said marriage and that otherwise he was not entitled to any interest in the estate, real or personal, of said decedent.

For the reasons given herein, the trial court erred in overruling appellant's, James A. Smith, motion for a new trial.

Judgment reversed with instructions to the lower court to sustain appellant's motion for a new trial, and for further proceedings not inconsistent herewith.

NOTE.—Reported in 79 N. E. 2d 772.